UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
ERIN CUNNINGHAM,

          Plaintiff,

  -against-

FIRST RELIANCE STANDARD LIFE INSURANCE
COMPANY,

          Defendant.
----------------------------------------------------------X

**ORDER**
12-CV-2692 (SJF)(AKT)

FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★ JUL 18 2013 ★

LONG ISLAND OFFICE

FEUERSTEIN, J.

On April 17, 2012, plaintiff Erin Cunningham ("plaintiff"), a former teacher in the Port Washington Union Free School District (the "School District"), filed a complaint in the Supreme Court of the State of New York, County of Nassau, against First Reliance Standard Life Insurance Company ("defendant"), alleging that the denial of her claim for long term disability ("LTD") benefits under a group long term disability insurance plan (the "Plan") issued to the Port Washington Teachers Association Benefit Trust (the "Benefit Trust") violated the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001-1461. [Docket Entry No.1].[1] Defendant removed the case on May 29, 2012 pursuant to this Court's federal question

---

[1] Plaintiff asserts that the LTD policy submitted by defendant in support of its motion is not the policy issued to the Benefit Trust and has submitted a copy of "the actual policy." See [Docket Entry No. 26-2]. Defendant asserts that the document submitted by plaintiff is a Certificate of Insurance given to employees and not the policy provided to the policyholder. [Docket Entry No. 28]. The terms of the policy submitted by defendant appear to be identical to the terms stated in the Certificate of Insurance, and plaintiff has not offered any reason that the Certificate of Insurance is material to the pending motion. Therefore, it is not necessary for the Court to further address the issue.

1

jurisdiction under 28 U.S.C. § 1331. Id. Now before the Court is defendant's motion for summary judgment dismissing plaintiff's complaint pursuant to Rule 56 of the Federal Rules of Civil Procedure. [Docket Entry No. 23]. For the reasons that follow, defendant's motion is GRANTED.

I. Background

Plaintiff stopped working on May 6, 2009 and did not return for the rest of the 2008-2009 school year.[2] [Docket Entry No. 24] ("Def. 56.1 Stmt.") at ¶ 3. On August 1, 2009, she was diagnosed with Acute Inflammatory Radiculopolyneuropathy (Guillian-Barre Syndrome ("GBS")). Id. at ¶ 6. Plaintiff did not return to work for the 2009-2010 school year and received sick leave benefits from the School District until June 15, 2010. Id. at ¶ 7.

In April 2010, plaintiff filed a claim with defendant for LTD benefits dating from May 2009. Id. at ¶ 9. On July 1, 2010, defendant denied the claim because, although plaintiff provided "evidence of disability as of [July 2, 2009]," she "last worked on a full time basis as of [May 6, 2009]," and "there [was] no medical evidence of [her] inability to perform [her] own occupation from [May 6, 2009 to July 2, 2009]."[3] AR 102.[4] Defendant therefore concluded that plaintiff was "no longer part of an Eligible Class of employees" under the Plan "when [she] ceased working on a Full-time basis on [May 6, 2009]." AR 102.

Plaintiff appealed the decision on August 6, 2010, arguing, inter alia, that she "provided

---

[2] The reason for plaintiff's absence from work is discussed in further detail below.

[3] As plaintiff notes in her appeal letter, the time period from June 26, 2009 to July 2, 2009 is irrelevant because school was not in session and plaintiff would not have been working regardless of her health. [Docket Entry No. 23-4].

[4] References to the administrative record, [Docket Entry No. 26] at Ex. C, are denoted "AR."

the Port Washington School District with the necessary evidence to support that [she] was medically unable to work from May 6, 2009 through . . . June 26, 2009" and "received sick leave benefits as a full-time employee because of [her] health status during the time in question . . . ." AR 75-76. Plaintiff argued that "[u]nder [the Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601, et seq. ("FMLA"),] that operates concurrently with sick leave, [she] [is] unrestricted by federal law to maintain full benefits." Id.

On October 18, 2010, defendant affirmed its denial of plaintiff's claim. Def. 56.1 Stmt. at ¶¶ 11-12; Defendant's Reply Brief in Support of Defendant's Motion for Summary Judgment [Docket Entry No. 28] ("Def. Reply") at 3. Defendant stated that its "review of [plaintiff's] claim file and the information submitted for appeal . . . suggests that the reason for [her] 'leave' of May 6, 2009 did not pertain to a Sickness or Injury as defined . . . in the group policy." AR 67. Defendant further stated that although "the claim documentation [indicated that plaintiff] did incur a Sickness or Injury[,] . . . it occurred on approximately [June 26, 2009], well subsequent to when [she] initially stopped working on [May 6, 2009]," and "[a]s such, . . . [plaintiff] [was] no longer in an Eligible Class as of [May 6, 2009] . . . ." AR 67.

II. Standard

"Courts reviewing a challenge of [a] denial of benefits under ERISA may do so on a motion for summary judgment, which 'provides an appropriate vehicle whereby the Court can apply substantive ERISA law to the administrative record.'" Zarringhalam v. United Food & Commercial Workers Int'l Union Local 1500 Welfare Fund, 906 F. Supp.2d 140, 155 (E.D.N.Y. 2012) (quoting Gannon v. Aetna Life Ins., Co., No. 05 Civ. 2160, 2007 WL 2844869, at *6 (S.D.N.Y. Sept. 28, 2007)). "'In such an action the contours guiding the court's disposition of the summary judgment motion are necessarily shaped through the application of the substantive

3

law of ERISA.'" Topalian v. Hartford Life Ins. Co., --- F. Supp.2d ---, 2013 WL 2147553, at *33 (E.D.N.Y. May 16, 2013) (internal quotation marks omitted); see also Lopes v. First Unum Life Ins. Co., No. 09-CV-2442, 2011 WL 1239899, at *3 (E.D.N.Y. Mar. 30, 2011) ("ERISA permits a person denied benefits under an employee benefit plan to challenge the denial in federal court.") (citing 29 U.S.C. § 1132(a)(1)(B)).

"[A] denial of benefits challenged under [ERISA] is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989)); see also Krauss v. Oxford Health Plans, Inc., 517 F.3d 614, 622 (2d Cir. 2008) (same). "If the insurer establishes that it has such discretion, the benefits decision is reviewed under the arbitrary and capricious standard." Krauss, 517 F.3d at 622 (citing Fay v. Oxford Health Plan, 287 F.3d 96, 104 (2d Cir. 2002)). "Under the arbitrary and capricious standard of review, [the Court] may overturn an administrator's decision to deny ERISA benefits only if it was without reason, unsupported by substantial evidence or erroneous as a matter of law. This scope of review is narrow; thus, [the Court is] not free to substitute [its] own judgment for that of the insurer as if we were considering the issue of eligibility anew." Hobson v. Metro. Life Ins. Co., 574 F.3d 75, 83-84 (2d Cir. 2009) (internal quotation marks and alterations omitted). "The plan administrator bears the burden of proving that the deferential standard of review applies." Fay, 287 F.3d at 104 (citing Kinstler v. First Reliance Standard Life Ins., Co., 181 F.3d 243, 249 (2d Cir. 1999)).

Here, it is undisputed that defendant had discretionary authority to determine a claimant's eligibility for benefits under the Plan, see AR 14 ("First Reliance Standard Insurance Company shall serve as the claims review fiduciary with respect to the insurance policy and the Plan. The

4

claims review fiduciary has the discretionary authority to interpret the Plan and the insurance policy and to determine eligibility for benefits. Decisions by the claims review fiduciary shall be complete, final and binding on all parties."), and it is well-established that the arbitrary and capricious standard applies in such circumstances, see, e.g., Fay, 287 F.3d at 104 ("The Plan invokes discretion by defining "Medically Necessary" as those services which, 'as determined by [the] . . . Medical Director,' meet four listed requirements. . . . This phrase grants [the insurer] discretionary authority as to determinations of what is "Medically Necessary," . . . [and therefore] this Court will review determinations of medical necessity with deference to the findings of the Medical Director under an arbitrary and capricious standard . . . .") (emphasis in original); Paris-Absalom v. Aetna Life Ins. Co., No. CV 2011-0610, 2012 WL 4086744, at *1 (E.D.N.Y. Sept. 17, 2012) ("Since the parties agree that the plan confers discretion upon the administrator to interpret the plan provisions, review of the denial of benefits here is governed by the arbitrary and capricious standard."); Topalian, 2013 WL 2147553, at *35 (finding that group benefit plan "unambiguously confer[red] on [the insurer] the discretionary authority to determine disability eligibility and to enforce and interpret the terms of the Plan" where the policy documents stated, inter alia, that "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Group Insurance Policy"). However, plaintiff argues that because defendant both evaluates and pays benefit claims under the Plan, there is a conflict of interest precluding application of the deferential arbitrary and capricious standard. Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment [Docket Entry No. 25] ("Pl. Memo.") at 4-6.

While "a plan under which an administrator both evaluates and pays benefits claims creates the kind of conflict of interest that courts must take into account and weigh as a factor in

determining whether there was an abuse of discretion," such a conflict of interest "does not make de novo review appropriate." McCauley v. First Unum Life Ins. Co., 551 F.3d 126, 133 (2d Cir. 2008) (citing Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 111-12 (2008)). "A plaintiff's showing that the administrator's conflict of interest affected the choice of a reasonable interpretation is only one of 'several different considerations' that judges must take into account when 'review[ing] the lawfulness of benefit denials.'" Hobson, 574 F.3d at 83 (quoting McCauley, 551 F.3d at 133); see also Schrom v. Guardian Life Ins. Co. of Am., No. 11 Civ. 1680, 2012 WL 28138, at *3 (S.D.N.Y. Jan. 5, 2012) (explaining that the Supreme Court "determined that when a plan gives discretion to the administrator, the existence of a conflict does not sanction application of a de novo standard of review; rather, courts must continue to utilize a deferential standard, but consider any conflict as one factor in determining whether the decision denying benefits was arbitrary and capricious") (citing Glenn, 554 U.S. at 112-15).

Plaintiff has failed to allege facts demonstrating that defendant's position as both plan administrator and insurer affected its decision to deny her claim. See McGann v. Travelers Prop. Cas. Corp., No. 06-CV-527, 2007 WL 2769500, at *7 (E.D.N.Y. 2007) ("The Second Circuit has repeatedly held that the fact that a defendant 'served as both plan administrator and plan insurer, although a factor to be weighed in determining whether there has been an abuse of discretion, is alone insufficient as a matter of law to trigger stricter review.'") (quoting Pulvers v. First UNUM Life Ins. Co., 210 F.3d 89, 92 (2d Cir. 2000)). As discussed in further detail below, defendant's basis for denying the claim was not unreasonable and was supported by the information provided by plaintiff. Although plaintiff has submitted evidence that purportedly demonstrates that defendant's decision was incorrect, this information was not presented to defendant at the time the claim was denied and therefore does not support the conclusion that defendant's claims

6

review process was deficient. Therefore, while the Court has considered the factor of defendant's dual role as insurer and administrator, the arbitrary and capricious standard must be applied.

III. Analysis

The Plan provides that defendant will pay LTD benefits "if an Insured . . . is Totally Disabled as the result of a Sickness or Injury" that "cause[d] Total Disability which beg[an] while insurance coverage [was] in effect for the Insured." AR 09-10, 18.[5] Only "active" employees "working . . . for a minimum of 14 hours during a person's regular work week" are eligible for coverage, AR 07, 09, 101-02, but the Plan provides that coverage will continue "for up to 12 weeks in a 12 month period, if [the employee] is eligible for, and [the employer] ha[s] approved, a Family and Medical Leave of Absence under the terms of the [FMLA]." AR 25. The Plan states that "[t]he Insured will not qualify for the Family and Medical Leave of Absence Benefit unless [the insurer] has received proof from [the employer], in a form satisfactory to [the insurer], that the Insured has been granted a leave under the terms of the [FMLA]." AR 25.

According to defendant, plaintiff stopped working on May 6, 2009 to care for her ill mother, Def. 56.1 Stmt. at ¶ 3, and at the time "neither indicated that her leave pertained to her own sickness or injury nor did she apply for FMLA," and instead used accrued paid sick-time between May 6, 2009 and June 26, 2009, the last day of the 2008-2009 school year. Defendant's Memorandum of Law in Support of Defendant's Motion for Summary Judgment [Docket Entry No. 23-6] ("Def. Memo.") at 2-3; Def. 56.1 Stmt. at ¶ 6. Defendant asserts that because plaintiff did "not provide[] any evidence to indicate that her leave in May 2009 was as a result of injury

---

[5] "Total Disability" means, with qualifications not relevant here, that "as a result of an Injury or Sickness . . . an Insured cannot perform the material duties of his/her Regular Occupation . . . ." AR 10.

or sickness and . . . did not apply . . . for FMLA [leave] in May 2009," Def. 56.1 Stmt. at ¶ 12, she "stopped being an active, full-time employee on May 6, 2009, [and] her coverage under the group policy terminated before July 2009 and her claim was correctly denied." Def. Reply at 1; AR 66; Def. Memo. at 1 ("[Defendant] denied the claim because plaintiff was not an eligible employee under the terms of the Plan when her claimed disability began."). See also Weinreb v. Hosp. for Joint Diseases Orthopaedic Inst., 404 F.3d 167, 170 (2d Cir. 2005) ("A suit for benefits due under the terms of an ERISA-governed plan necessarily fails where the participant does not qualify for those benefits . . . .") (citing 29 U.S.C. § 1132(a)(1)(B)).

Plaintiff concedes that she did not apply for and was not granted FMLA leave in May 2009. Although J. Christopher Haring, a Trustee of the Benefit Trust, stated in a letter to defendant that he "believe[s] the [School District's] records specifically list [plaintiff's] absence [in May 2009] as FMLA," AR 94, a separate letter to defendant from Kathleen A. Mooney, Assistant Superintendent for Human Resources and General Administration at the School District, indicated that Haring was mistaken and that plaintiff did not apply for, and the School District did not approve, FMLA leave in May 2009. AR 85. Mooney stated that plaintiff "had sufficientسick time accumulated to cover the period from May 4, 2009 through June 26, 2009," and "[t]herefore, there was no need for her to make formal application for an unpaid FMLA." AR 85.

Plaintiff also concedes that she would not qualify as an "active" employee if she had stopped working on May 6, 2009 to care for her mother. See Pl. Memo. at 7 ("The school records show that she was an active employee and that she was sick [in May 2009]. To say that a party is not an active employee, being so ill that she is unable to work during the sickness, precludes her from disability because she was out sick is an oxymoron."). Instead, plaintiff

8

argues that she was unable to work in May 2009 due to the same illness that prevented her from returning to work during the 2009-2010 school year, i.e., GBS. See Pl. Memo. at 1 ("The key time frame in this litigation is the period between May 7, 2009 and June 26, 2009. Plaintiff contends that after May 6, 2009 she was too ill to continue working and Defendant contends that the Plaintiff did not work during this period of time to take care of her ill mother."); Plaintiff's Response and Counter Statement of Material Facts to Defendant's Statement of Material Facts [Docket Entry No. 27] at ¶¶ 14-15 (stating that plaintiff "was disabled and unable to work from May 7, 2009 forward" due to "Chronic Inflammatory Demyelinating Polyneuropathy"). However, plaintiff has failed to point to any evidence in the administrative record to support her assertion that she was unable to work due to illness in May 2009, stating only that she (1) "provided evidence of illness to the School District," Id. at ¶ 16, and (2) "supplied at the request of the Defendant, open medical authorizations in sufficient number for the Defendant to obtain all of the Plaintiffs [sic] medical records," Pl. Memo. at 8.

Although the School District's internal records state that plaintiff was absent from May 6, 2009 to June 26, 2009 because she was "sick" and not because of "family illness," the stated reason for plaintiff's absence for seven (7) days in April 2009, AR 77-80, 86, there is no indication that plaintiff ever provided "evidence of illness" to the School District. Moreover, under the terms of the Plan, it is plaintiff's burden to provide evidence of her disability to defendant, see AR 18 ("[The Insurer] will pay a Monthly Benefit if an Insured: (1) is Totally Disabled as the result of a Sickness or Injury covered by [the] Policy; (2) is under the regular care of a Physician; (3) has completed the Elimination Period; and (4) <u>submits satisfactory proof of Total Disability</u> to [the insurer].") (emphasis added), and therefore providing "evidence of illness" to the School District and medical authorizations to defendant is clearly insufficient.

9

Finding no support for her argument in the administrative record, plaintiff has relied upon additional materials submitted to the Court in opposition to the motion, including her affidavit, additional medical records, and a letter from Dr. Teena Shetty, a neurologist that began treating plaintiff on August 24, 2010. [Docket Entry No. 26-3]; See Pl. Memo. at 8 ("The Plaintiff, as is fully set forth in her Affidavit and in the Affirmation of Doctor Shetty, from and after May 7, 2009 rapidly became totally disabled, paralyzed, hospitalized, wheelchair bound, and immobilized with limited use of her hands and feet."). Dr. Shetty states that "[i]n March and April of 2009, [plaintiff] began to experience severe headaches, neck pain, and unexplained dizziness," which plaintiff "thought . . . were due to the stress of her mother's illness." Id. She also states that "[i]t took several weeks to determine the ultimate GBS diagnosis, as all of [plaintiff's] symptoms did not point to one particular disease." Id.

The Second Circuit has stated that when applying the deferential arbitrary and capricious standard, "the presumption is that review is limited to the record in front of the claims administrator unless the district court finds good cause to consider additional evidence." Muller v. First Unum Life Ins. Co., 341 F.3d 119, 125 (2d Cir. 2003) (internal quotation marks omitted); see also Paris-Absalom, 2012 WL 4086744, at *1 ("Good cause for the court to consider evidence outside the record may be establish[ed] in situations where the administrator operated under a conflict of interest."). As discussed above, plaintiff has failed to offer any reason that the arbitrary and capricious standard should not be applied and has not shown good cause for the Court to consider material outside the administrative record. Therefore, Dr. Shettty's opinion regarding the onset of plaintiff's illness and any medical records that were not submitted to defendant at the time plaintiff's claim was denied are not relevant to the disposition of the pending motion, and the scope of the Court's inquiry is limited to the administrative record. See

10

Hobson, 574 F.3d at 84 ("[W]e are not free to substitute our own judgment for that of the insurer as if we were considering the issue of eligibility anew.") (internal quotation marks and alteration omitted).[6]

The administrative record contains substantial evidence to support defendant's conclusion that plaintiff was not absent from work due to disability in May 2009. Plaintiff's own LTD benefits application stated that she did not visit a doctor in connection with her illness until July 2, 2009 and was first unable to work on a full-time basis on July 21, 2009, over two (2) months after her absence from work began. AR 124-25; Def. Memo. at 3-4; Def. 56.1 Stmt. at ¶ 17. The medical records submitted by plaintiff with her claim also indicated that she told her doctor that she first began experiencing symptoms of her illness on July 21, 2009. AR 102. Moreover, the School District's letter submitted to defendant during plaintiff's application process stated that "[f]rom May 7, 2009 to the end of the school year (on or about June 26) [plaintiff] was on sick leave <u>for conditions unrelated to her disability claim</u>," and that "[d]uring the summer of 2009 [plaintiff] became seriously ill with Guillian Barre Syndrome, <u>which was separate and distinct from her earlier illness</u>" and "prevented her from working during the entire 2009-10 school year." AR 93-94 (emphasis added).

Defendant's determination that plaintiff was absent from work to care for her mother was also supported by a letter from a social worker "assigned to [plaintiff's] mother's case at

---

[6] Even if the Court were to consider the additional information submitted by plaintiff, it does not support plaintiff's claim that she was disabled in May 2009 (aside from the self-serving statements in her affidavit). Because Dr. Shetty did not begin treating plaintiff until August 2010, she is not able to reliably opine on whether plaintiff began experiencing symptoms of GBS prior to July 2009 or whether such symptoms were sufficiently severe to prevent plaintiff from working. Moreover, none of the additional medical records submitted by plaintiff (relating to visits to physicians in January, February and March of 2009) indicate that she was disabled in May 2009. See [Docket Entry No. 26].

Memorial Sloan-Kettering Cancer Center." AR 107. The letter stated that the social worker had met with plaintiff "multiple times during May and June, 2009" and that plaintiff "was having a very difficult time coping with her mother's illness." AR 107. This information was consistent with plaintiff having been absent from work for "family illness" for multiple days in April 2009, AR 78-79, and Haring's statement that plaintiff's absence in May 2009 was "unrelated" to her GBS.[7] The administrative record thus demonstrates that defendant's denial of plaintiff's claim was not without reason and was supported by substantial evidence.

IV. Conclusion

For the foregoing reasons, defendant's motion [Docket Entry No. 23] is GRANTED. The Clerk of Court is respectfully directed to close this case.

**SO ORDERED.**

s/ Sandra J. Feuerstein

───────────────
SANDRA J. FEUERSTEIN
United States District Judge

Dated: July 18, 2013
      Central Islip, New York

---

[7] Defendant's case notes also indicate that plaintiff told defendant's representative that she was out of work in May 2009 for "depression related to her mother's illness and ultimate death ... on [August 1, 2009]." AR 40. Although plaintiff argues that these case notes are "self serving declarations, are not evidence and have no probative value," Pl. Memo. at 2, they are consistent both with the rest of the administrative record and with the statement of plaintiff's neurologist (submitted in response to the motion) that plaintiff "thought that [her] symptoms [in March and April of 2009] were due to the stress of her mother's illness . . . ." [Docket Entry No. 26].